IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL DOCKET NO.: 1:18CV99

| DAVID ALLEN TRAPP, | § |
| --- | --- |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| LEXISNEXIS RISK SOLUTIONS, INC. | § |
| | § |
| Defendants. | § |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY RESPONSES**

LexisNexis' doubles down on its litigation strategy to delay and embargo all discovery that it unilaterally deems to be irrelevant to this case. (ECF 37). Furthermore, its response to the motion to compel is similar to its conduct in this litigation, treating the discovery dispute as if a lengthy meet and confer process had never occurred.

### I. INTRODUCTION

In its opposition to the motion to compel, LexisNexis misleadingly framed the case as one stemming "from the alleged denial of a SunTrust loan for the purchase of a pontoon boat." This case *stems* only from LexisNexis' selling a false

and harmful report about Mr. Trapp -- scoring him as the highest risk of fraud because LexisNexis regurgitated erroneous information that he was deceased. The only way that Mr. Trapp ever found out that LexisNexis had smeared his good name, violated his reputation and sold an erroneous report that made it impossible for him to get a loan was because of his lawsuit against SunTrust.[1] SunTrust failed and refused to supply Mr. Trapp with an ECOA-compliant adverse action notice stating the reason that he had been denied a loan was due to LexisNexis creating and selling the fallacious fraud report. Everyone involved in creating, buying, selling and using the report about Mr. Trapp tried to keep it a secret from him. It was only through litigation and discovery that Mr. Trapp was able to learn that LexisNexis had sold the harmful report to Equifax, which then repackaged it and sold it to SunTrust.

Defendant has not raised a single legitimate basis for its refusal to participate in discovery. Instead, it argues that the Plaintiff and the court must accept its affirmative defenses as established. Its whole discovery strategy is

---

[1] The lawsuit against SunTrust was not an FCRA case, but an Equal Credit Opportunity Act case brought for failure to supply Mr. Trapp with the principle reason for denying him credit. SunTrust told Mr. Trapp the denial was based on incomplete information, when in fact it was based on the "highest risk of fraud" score on the report the LexisNexis sold with the false information that Mr. Trapp had a "deceased SSN." Not only are the ECOA and FCRA completely different statutes, the rights, obligations, and harms that flow from the violation of each statute are different.

predicated on its argument that the Plaintiff's discovery requests are irrelevant and disproportional based solely on its defenses. Defendant's opposition brief is also borderline frivolous as it completely ignores the hours of attorney time that the Plaintiff has spent in attempting to narrow and explain the reasons for discovery requests and follow-up in order to obtain cooperation from the Defendant. Perhaps the most important fact to remember is that the Defendant initially took a position of refusal to participate in discovery from the Rule 26(a)(1) disclosures and has followed that pattern ever since. It has objected to almost all of the Plaintiff's written discovery and has not substantively supplemented any of its discovery responses. For the first time ever, ignoring the well-settled law in this District and the Fourth Circuit, Defendant takes the preposterous position that its discovery abuse is approved by courts when discovery requests are facially improper. See *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243–44 (M.D.N.C. 2010) (collecting cases).

**1. Defendant's proportionality argument is meritless.**

Defendant has refused to cooperate in Plaintiff's discovery based upon its assertion of defenses that it has yet to prove: that the Plaintiff is precluded from recovering statutory and punitive damages; that his damages are limited to value of a denied loan; that it isn't a consumer reporting agency; that Mr. Trapp wasn't the subject of a consumer report; and that the only relevant inquiry is limited to

3

Fraud Advisor. It plans to win this case by preventing the Plaintiff not only from discovering the elements of his FCRA case, but also to prevent the Plaintiff from opposing the affirmative defenses. The Defendant's objections and its paltry answers "subject to" its objections are impermissibly premised on its own interpretation of the narrow universe of possibly discoverable information. The Plaintiff's opening brief describes the elements of the 1681e(b) claim, as well as the defenses he must address in this case.

The Defendant's improper narrowing of responses to discovery effectively eliminate any information about its procedures for collecting, investigating, maintaining, updating, and publishing the consumer report it sold about Mr. Trapp. The consumer report that it has published to third parties that the Plaintiff is the highest risk of fraud and that he is deceased is incredibly damaging. What's more, this collection, maintenance and publication of information about Mr. Trapp was exactly as the Defendant intended. (Trost Dep. Tr. 102:16-103:7)(Ex. 1). Yet, the information that the Plaintiff needs to prove his case is uniquely within the sole custody of the Defendant.

Defendant's reasons for refusing to participate in discovery would effectively preclude any discovery in any case where a defendant asserted a defense.

LexisNexis is simply refusing to participate in discovery based on an argument that is properly made at summary judgment. In fact, its argument here that it isn't

4

a CRA and the report about Mr. Trapp wasn't a consumer report, has been made and rejected by other courts. *Witt v. CoreLogic Saferent, LLC*, Civ. 3:15CV386 (E.D.Va. Dec. 14, 2016)(ECF 143); *Henderson v. CoreLogic NBD, LLC*, 178 F.Supp.3d 320, 327 (E.D.Va. April 16, 2016). That LexisNexis has asserted these defenses supports the need for Plaintiff's discovery, rather than forecloses it. Blocking and refusing discovery was not the intent of the proportionality requirement in Rule 26.[2]

LexisNexis objected based on proportionality to only two requests for production, one of which (RFP 15) Plaintiff withdrew in the meet and confer

---

[2] Rule 26 was amended in 2015 to add a proportionality requirement, but the Advisory committee notes are clear that it did not dramatically change the rules that were in place prior to the amendment:

> Most of what now appears in Rule 26(b)(2)(C)(iii) was first adopted in 1983 . . . [t]he present amendment restores the proportionality factors to their original place in defining the scope of discovery. This change reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections. Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations. Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.

5

process. Therefore, any proportionality argument regarding the remaining RFPs must be disregarded. Even so, the proportionality argument for RFP 7 was unaccompanied by any cognizable support for the objection. Defendant complained the request was not proportional because it used the words "all documents," but ignored the fact that the document request was specifically designed to obtain information narrowly focused on the training of employees to comply with § 1681e(b). Simply scanning a discovery request for the words "all documents" while disregarding the rest of the request is not only improper, it is the very essence of wasteful and a bad-faith objection.

The documents requested are specifically limited to the training and instruction of its employees concerning compliance with the discrete section of the FCRA that is at issue in this case. Whether and how LexisNexis trains its employees with respect to § 1681e(b) is relevant to understanding what LexisNexis' understanding of its obligations under the statute. This is relevant to both liability and willfulness. FCRA willfulness is "a fact-driven inquiry that cannot be decided without proper discovery" *Milbourne v. JRK Residential Am.*, 92 F.Supp.3d 425, 434 (E.D.Va. Mar. 11, 2015). The Plaintiff is entitled to learn how the Defendant instructs its employees on compliance with § 1681e(b), this will provide evidence about the Defendant's reading of the statute, how it interprets its obligations, how it trains its employees, and what it considers to be a reasonable procedure to assure

6

maximal accuracy, and whether it followed its procedures. For these same reasons, the details sought about employee training in Interrogatory 8 are relevant to the claims and defenses.[3] *Drew v. Equifax Info. Servs. LLC*, 2010 WL 5022466, at *8 (N.D. Cal. Dec. 3, 2010)(the injury to the Plaintiff occurred after a cost-benefit analysis by the Defendant, including with the knowledge of the risk to those seeking credit.)

Additionally, in the meet and confer process, Defendant complained that the request had no time limitation, to which the Plaintiff suggested 10 years as a reasonable limit. Defendant still objected that it was too much time, to which the Plaintiff further compromised to limit to five years preceding the filing of the Complaint for all of the RFPS unless otherwise noted.[4] The question of timing was resolved in August. It is now October and not a single responsive document to RFP 7 has been produced.

With respect to interrogatories 10, 16, 17 and 18, the Defendant listed proportionality with a raft of additional boilerplate objections that utterly lacked

---

[3] In the meet and confer process, LexisNexis promised to "revisit" the objection and information sought. However, no supplementation or response of any kind has been forthcoming.

[4] All the while that the Defendant was objecting to the ten-year time limit, it knew that information upon which it had based the erroneous reports about Mr. Trapp were first acquired in 2006. The Defendant did not disclose this information but for a spreadsheet produced on the eve of the deposition of Jason Trost. (Ex. 2).

7

Case 1:18-cv-00099-CCE-JLW   Document 40   Filed 10/11/18   Page 7 of 18

maximal accuracy, and whether it followed its procedures. For these same reasons, the details sought about employee training in Interrogatory 8 are relevant to the claims and defenses.[3] *Drew v. Equifax Info. Servs. LLC*, 2010 WL 5022466, at *8 (N.D. Cal. Dec. 3, 2010)(the injury to the Plaintiff occurred after a cost-benefit analysis by the Defendant, including with the knowledge of the risk to those seeking credit.)

Additionally, in the meet and confer process, Defendant complained that the request had no time limitation, to which the Plaintiff suggested 10 years as a reasonable limit. Defendant still objected that it was too much time, to which the Plaintiff further compromised to limit to five years preceding the filing of the Complaint for all of the RFPS unless otherwise noted.[4] The question of timing was resolved in August. It is now October and not a single responsive document to RFP 7 has been produced.

With respect to interrogatories 10, 16, 17 and 18, the Defendant listed proportionality with a raft of additional boilerplate objections that utterly lacked

---

[3] In the meet and confer process, LexisNexis promised to "revisit" the objection and information sought. However, no supplementation or response of any kind has been forthcoming.

[4] All the while that the Defendant was objecting to the ten-year time limit, it knew that information upon which it had based the erroneous reports about Mr. Trapp were first acquired in 2006. The Defendant did not disclose this information but for a spreadsheet produced on the eve of the deposition of Jason Trost. (Ex. 2).

any specificity.[5] Interrogatory 10 seeks information specifically regarding § 1681e(b) and is relevant to how LexisNexis decides whether a product is governed by the FCRA or not. Despite two depositions and targeted discovery requests, LexisNexis has not explained how it determines whether it will comply with the FCRA. The Plaintiff agreed to that Interrogatories 16 and 17 were seeking the same information and could be merged, and that Interrogatory 18 could be narrowed to Fraud Advisor only. Yet, the Defendant refused to budge at all on its objections. The Plaintiff will be able to determine whether and how the Defendant acquires the information, compiles and sells it, and whether it tends to support the Plaintiff's argument that it is a consumer report or the Defendant's defense that it is not. For instance, in a similar case, *Henderson*, the court observed that the defendant's argument that the report at issue wasn't a consumer report was at odds with its own documents:

> More importantly, NBD's argument that its search results are not consumer reports is squarely at odds with its own documents, wherein it acknowledges that it resells *consumer reports. See, e.g.,* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem. in Opp.," EOF No. 205) Ex. A, NBD *Basic FCRA/FACTA Training* June 2007, at CLH000625 ("NBD is essentially a Reseller of consumer information and reports") (emphasis added); Ex. F, NBD–ADP Reseller Services Agreement, at CL–H288 ("The Data Services will consist of consumer report information with respect to individuals ('Consumers')[ ...] Each access of the [NBD] Data Services by Reseller [ADP] shall be considered a procurement of a consumer report

---

[5] The Plaintiff withdrew Interrogatory 4.

for resale by Reseller."); Ex. H, NBD Standard Reseller Agreement, at CL–H2775–78 ("Solution Provider [e.g., ADP or Verifications] may request and NBD may provide to Solution Provider Consumer Reports ('Report' or 'Reports') for employment and/or tenant screening purposes only, as defined under the Fair Credit Reporting Act").[4] On this record, the undisputed documentary evidence from NBD establishes that, in practice, NBD has freely recognized that the background checks that it provides are indeed "consumer reports" pertaining to individual consumers within the meaning of the FCRA.

*Henderson v. CoreLogic Nat'l Background Data, LLC,* 161 F. Supp. 3d 389, 395 (E.D. Va. 2016). Here, the Defendant's tack is simply to prevent the Plaintiff from learning anything about how it makes this decision.

The issues at stake for the Plaintiff are high: he is an unwilling participant and victim of LexisNexis's economic activity that collected, stored, compiled, scored and sold a report about him that was false and highly derogatory. In addition to economic damages, Mr. Trapp is entitled to recover non-economic damages in the nature of a tort that are unliquidated and uncapped. Likewise, the availability of punitive damages is also uncapped. In fact, punitive damages are available under the FCRA even where there are no actual damages. *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001). Whether LexisNexis can engage in conduct for a profit without any regard for the strictures of the FCRA, dragging the Plaintiff's good name and reputation through the mud by branding him as a fraudster, is of the utmost importance to Mr. Trapp. The amount in controversy can be high, with

9

FCRA actual damages verdicts ranging[6] from low five figures after remitter to well over a million dollars.

---

[6] For illustrative purposes only, the following cases are examples of FCRA actual damages awards: *Adams v. Phillips*, 2002 U.S. Dist. LEXIS 24888 (E.D. La. 2002) ($225,000 actual damages based upon general and economic damage theories); *Anderson v. Conwood Co.* 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($50,000 in actual damages awarded in absence of testimony other than worry, stress and anxiety): *Bach v. First Union,* No. 3:01CV191 (S. D. Ohio) ($400,000 in actual damages); *Bell v. May Dep't Stores*, (Missouri 2000, Case No. 22942-09508-01, jury award $50,000 actual damages); *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp2d 851(W.D. Ky. Mar. 14, 2003) ($197,000 emotional distress damages remitted to $100,000 based upon inaccurate credit reporting by credit reporting agency); *Brimm v. Midland Credit Management, Inc.,* (N.D. AL February 25, 2011) ($100,000 jury verdict for actual damages and $623,180 for punitive damages for emotional distress and lost credit based upon Defendant's violation of the Fair Credit Reporting Act); *Brown v. Experian*, No. 3:01CV1967-RNC (D. Conn. April 16, 2004) ($50,000 jury verdict for emotional distress damages and lost credit in reinvestigation case under 15 U.S.C. §1681i); *Conseco Finance Servicing Corp. v. Carlson, District Court, Creek County, Sapulpa Division, State of Oklahoma*, No. CJ 00 227, Feb. 14, 2002 ($450,000 in actual damages for emotional distress); *Drew v. Equifax* No. 3:07CV726-SI (N.D. Cal. Aug. 8, 2010) ($315,000 in compensatory damages for emotional distress, plus $6,326.00 in other actuals); *Guimond v. Trans Union*, 45 F.3d 1329 (9th Cir. 1995) (jury awarded $275,000 for humiliation and mental distress damages available under FCRA following remand); *Johnson v. MBNA*, (E.D. Va. 2002) (jury award of $90,300 for emotional distress and damage to reputation sustained against credit furnisher MBNA for negligent investigation of consumer's dispute in violation of FCRA section 1681s 2(b) appeal reported at 357 F.3d 426 (4th Cir.2004); *Jorgenson v Experian*, No. 96CV286-JE (D. Ore. 1998) ($600,000 in actual damages); *Kirkpatrick v. Equifax*, (2005 WL 1231485, May 23, 2005, D. Oregon) ($210,000 actual damages for identity theft reinvestigation claim); *McGowan v. Warner*, No. 95CV3310 (Alabama 1999) ($1.85 million to theft of identity victim); *Mills v. NationsBank* (3rd Judicial District, Lake City, Florida, 1999) (Jury award $140,000 actual); *Miller v. Equifax Information Services, LLC.,* 3:11-cv-1231 (D. Or. 2011) (awarding 18.4 million dollars in damages against Equifax); *Mullins v. Equifax Info. Servs., Inc.*, 2007 U.S. Dist. LEXIS 62912

**2. Defendant has refused to withdraw its objections and describe the information that is being withheld since meeting and conferring.**

---

(E.D. VA. Aug. 27, 2007) (jury verdict upheld $20,000 in actual damages and $100,000 in punitive damages); *Robinson v. Equifax*, No. 06CV1336 (E.D. Va. 2006) ($200,000 actual damages for identity theft reinvestigation claim) aff'd at 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax*, No. 1:05CV1272-LMB (E.D. Va. 2005) ($350,000 actual damages for identity theft reinvestigation claim); *Soghomonian v. Trans Union*, No. Civ. F 99CV5773-SMS (E.D. Cal. 2004) stipulated at 2005 WL 1972594 (E.D.Cal. June 20, 2005) ($330,000 actual damages); *Stevenson v. TRW*, 987 F.2d 288 (5th Cir. 1993) ($30,000 in mental anguish and embarrassment damages); *Thomas v. Trans Union*, No. 3:00CV1150 (Jan. 20, 2003) (docket #184) ($300,000 actual damage for emotional distress); *Thompson v. Equifax*, (2003 WL 1579757, M.D. Ala., March 3, 2003) (jury award $80,000); *Thompson v. San Antonio Retail Merchant*, 682 F.2d 509 (5th Cir. 1982) ($10,000 actual damages for humiliation and mental distress even when no out of pocket expenses); *Trans Union Corp. v. Crisp*, 896 S.W. 2d 446 (Ark. App. 1995) ($15,000 compensatory damages, $25,000 punitive damages); *Wenger v. Trans Union*, No. 2:95CV6445-ER (C.D. Cal. 1996) ($200,000 actual damages award); *Williams v. Equifax*, 9th Judicial Circuit, Orange County, Florida, Case No. 48-2003-CA-9035-0, Nov. 17, 2007 ($219,000 actual damages); *Zamora v. Valley Fed. S&L Ass'n*, 811 F.2d 1368 (10th Cir. 1987) ($61,500 in actual damages for emotion distress sustained based on impermissible access of consumer report under false pretenses); *Zotta v. Nations Credit*, No: 4:02 CV 1650 (E.D. Mo. Jan. 28, 2004) ($87,000 actual damages award); *Adams v. Phillips*, 2002 WL 31886737 (E.D. La. Dec. 19, 2002) ($200,000 actual damages); *Reilly v. Duvall County Public Schools*, 2007 WL 2120547 (M.D. Fla. July 23, 2007) ($208,197.18 actuals awarded, but capped at $100,000 under Florida law); *Quitto v. Bay Colony Golf Clubs*, 2007 WL 4098847 (M.D. Fla. Nov. 15, 2007) ($130,000 actual damages); *Peer v. Lewis*, 2008 WL 2047578 (S.D. Fla) ($133,200 damages, remittitur to $12,500); *Jansen v. Experian*, 2011 WL 846876 (D. Or. Mar. 9, 2011) (stipulated judgment of $275,000).

Defendant's refusal to withdraw its objections together with its unilateral limitation on what it deems relevant is confusing, misleading and leaves Plaintiff with no ability to determine the documents that are being withheld. *Turnage v. Clarity Servs., Inc.* 3:14CV760, 2015 WL 50926595, at *2 (E.D.Va. July 22, 2015). This is in direct disobedience of Fed. R. Civ. P. 34(b)(2)(C). Defendant simply rests on its argument that its defenses are dispostive and therefore it need not respond to the Plaintiff's requests.

## 3. Defendant's statement that it has "produced all information it has relevant to this dispute" is patently false.

The Plaintiff has already described the complete production of documents in this case, which are exactly as described in Plaintiff's opening brief. (Ex. 3). There are only two documents that reference the Plaintiff at all. One is a transaction report and the other is a spreadsheet that was created by Jason Trost without any of the underlying documents or data that was used to the create the spreadsheet. (Ex. 2). While on the one hand the Defendant argues that only one witness has any information, and the discovery can only relate to Fraud Advisor product, for which there is almost not information, it also argues that the Defendant is foreclosed from seeking punitive damages because he was a member of the class in *Berry*. Even if information about him was in the Accurint database, there is no evidence that it is the death record information which was used for the Fraud

12

Advisor report. In fact, the evidence so far is that death record information about the Plaintiff was housed in the master database known as Thor, and possibly an FCRA-governed database and a non-FCRA governed database. Trost Dep. Tr. 29:5-38:24; 73:21-75:3; 86:14-97:7. (Ex. 1)

LexisNexis' argument that the Plaintiff is foreclosed from seeking punitive damages in this case, as a result of this consumer report, because his information may also be stored in its Accurint database is a classic red herring. The Plaintiff is entitled to discovery that may be taken into account in assessing punitive damages include: the remedial purpose of the FCRA; the consumer harm that the FCRA is intended to address; the way the CRA conducts its business, including whether its conduct was willful; and the CRA's income and net worth. *Dixon-Rollins v. Experian Info. Sols., Inc.*, 753 F.Supp.2d 452 (E.D. Pa. 2010)(Experian's relative wealth was relevant to assessing the amount necessary to inflict punishment). The kind of erroneous reporting such as the report in this case is the very kind of misinformation that the FCRA was designed to address. Mr. Trapp suffered not only an erroneous report in the nature of defamation, he also suffered an invasion of his privacy. But for the litigation against SunTrust, Mr. Trapp never would have learned that LexisNexis was the entity responsible for the erroneous report. *Id.*

**4. The Defendant's delays and misrepresentations regarding the source of the information has prejudiced the Plaintiff.**

The Defendant's failure to produce responses to written discovery has severely prejudiced the Plaintiff from being able to pursue a discovery strategy, follow up written discovery, and narrow the topics necessary for the corporate deposition. When the Plaintiff crafted his complaint, he only knew that Equifax had obtained the Fraud Advisor report from LexisNexis and re-packaged it as its own brand. Plaintiff did not know where the information came from. LexisNexis tried to make it appear as if the information came directly from the state of Florida and provided contracts for the acquisition of public records to the Plaintiff. Mike Woodberry testified that the information was supplied by Florida and did not at any time indicate that the information actually was supplied to LexisNexis from another third-party vendor called "Cambridge Research Statistical Associates." Woodberry Dep. Tr. 45:16-48:1; Trost Dep. Tr. 17:17-23. (Ex. 5, 1). This misinformation was not corrected until the Plaintiff took Mr. Trost's deposition, which in fact would never have been corrected if Plaintiff had relied on LexisNexis' misrepresentation concerning Mr. Woodberry as the only fact witness with knowledge of the facts in this case.[7] To this day, the Plaintiff has received no information whatsoever about Cambridge Research Statistical Associates.

---

[7] The Defendant has also made the unilateral decision to not appear for depositions despite months of attempting to schedule in cooperation, including for the person most responsible for compliance.

14

Case 1:18-cv-00099-CCE-JLW   Document 40   Filed 10/11/18   Page 14 of 18

**5. The Defendant's privilege objections must be overruled.**

The Defendant has produced no privilege log at all, but it has lodged some type of work product or privilege objections to thirteen of the Plaintiff's requests. Since the LexisNexis responses have been limited to its unilateral determination of relevance, the Plaintiff has no way to know whether any material has been withheld based on this objection. To the extent that any responsive documents or responses exist, but have been withheld based on privilege, the objection must be deemed waived at this point. *Henderson v. CoreLogic NBD, LLC*, 178 F.Supp.3d 320, 327 (E.D.Va. April 16, 2016). LexisNexis argues that it is not required to log its privilege objections until the court rules on overbreadth and simply relies on its unilateral determination that it won't produce anything except that which it has already produced. Because the Plaintiff does not know what information was withheld on the basis of LexisNexis unilateral decision to pick and choose what it deemed to be relevant, the Plaintiff cannot know whether LexisNexis does or does not have responsive documents. The Defendant's objections based on overbreadth are not serious, but rather designed only to delay an avoid its discovery obligations. The Defendant hasn't produced a single policy or procedure, it has tried to hide the source of the information that it relied upon for the consumer report about Mr. Trapp, it has unilaterally based its discovery embargo as if its defenses were established facts. *Witt v. CoreLogic*, 3:15CV386, at 6-8 (E.D.Va. Dec.

14, 2016)(ECF 143)(in a § 1681e(b) claim, including willfulness, the court overruled all of defendant's objections based on its statute of limitations defense as premature; ordered all of the defendant's privilege objections waived for want of a privilege log; overruled objections based on the argument that it is not a consumer reporting agency and that the reports about the plaintiff were not consumer reports; overruled objection based on defendant's responses being limited to facts asserted as its defenses.)

## V. CONCLUSION

For the foregoing reasons, the Court should grant the relief requested in Plaintiff's Motion to Compel, overrule all of the objections by LexisNexis, and order LexisNexis to provide complete responses forthwith.

Respectfully,

 /s/ Susan M. Rotkis
Susan M. Rotkis
Va. State Bar No. 40693
Attorney for Plaintiff David Allen Trapp
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: srotkis@clalegal.com

*Plaintiff's Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2018, I electronically filed the foregoing with the clerk of the court, which will electronically serve the following counsel of record:

>D. Kyle Deak
>Troutman Sanders LLP
>305 Church at North Hills Street, Suite 1200
>Raleigh, North Carolina 27609
>Kyle.deak@troutman.com
>
>Julie D. Hoffmeister
>Troutman Sanders LLP
>1 Haxall Point
>Richmond, VA 23219
>Julie.hoffmeister@troutman.com

>/s/ Susan M. Rotkis
>Susan M. Rotkis
>Va. State Bar No. 40693
>Consumer Litigation Associates, P.C.
>763 J. Clyde Morris Boulevard, Suite 1-A
>Newport News, VA 23601
>Telephone: (757) 930-3660
>Facsimile: (757) 930-3662
>Email: srotkis@clalegal.com
>
>*Plaintiff's Counsel*

**Certificate of Word Count**

I certify that this brief contains less than 3,125 words in compliance with the local rules.

/s/ Susan M. Rotkis
Susan M. Rotkis